Julie KEEGAN, Appellee,

v.

FIRST BANK OF SIOUX FALLS, Individually and as Executor of the Estate of C.L. Anderson, Deceased, and Robert J. McDowell, Respondents and Appellees,

v.

Gunnar MERTZ, Petitioner and Appellant,

v.

BOYCE, MURPHY, McDOWELL & GREENFIELD, Respondents and Appellees.

No. 17111.

Supreme Court of South Dakota.

Argued Jan. 7, 1991.

Decided May 29, 1991.

David R. Gienapp of Arneson, Issenhuth and Gienapp, Madison, for appellees.

Michael D. Klampe of Klampe & Nordstrom, Rochester, Minn., Richard A. Johnson of Pruitt, Matthews & Muilenburg, Sioux Falls, for petitioner and appellant.

STEELE, Circuit Judge.

Gunnar Mertz (Mertz) takes this intermediate appeal from a trial court order suppressing certain evidence pertaining to damages in his claim against lawyer Robert J. McDowell (McDowell) and the law firm of Boyce, Murphy, McDowell and Greenfield (the law firm). We conclude that the trial court's ruling was premature and reverse its order.

## PROCEDURAL HISTORY

Julie Keegan (Keegan) brought suit in 1984 against Mertz, McDowell and the estate of C.L. Anderson (Anderson). The claim arose from transactions surrounding a bank in Wibaux, Montana. Mertz cross-claimed against McDowell and brought in the law firm in which McDowell was a member (Boyce, Murphy, McDowell and Greenfield) by third party complaint. Mertz's claims against McDowell and the law firm alleged legal malpractice in connection with Wibaux bank transactions, and also in connection with transactions surrounding another bank in Lovell, Wyoming.

Keegan's claims involving the Wibaux bank have been settled and she is no longer a party to the suit. The remaining claims pertinent to this appeal are those of Mertz against McDowell and the law firm.

The claimed malpractice relevant to this appeal is that McDowell, representing Mertz, failed to assist him in preparing the necessary documents required by the Comptroller of the Currency (Comptroller) under the federal Change in Bank Control Act, See 12 U.S.C. § 1817 (1984), resulting in the assessment of a $595,000 civil penalty for willful failure to comply with the act in regard to the Lovell bank.

On April 11, 1990, a pretrial motion hearing was held. McDowell and the law firm moved to prohibit the introduction of evidence of the assessment as claimed damages. The trial court granted the motion.

## FACTS

Prior to 1980, McDowell, Anderson and Keegan held ownership interests in banks in Wisconsin and in Wibaux, Montana. McDowell and Anderson also had interest in a Lovell, Wyoming, bank. McDowell and Mertz, a businessman, had been acquainted since 1979. In 1981, at McDowell's suggestion, Mertz purchased Keegan's interest in the Wibaux bank. Mertz also purchased an interest in the Lovell bank; after the purchase, Mertz, McDowell and Anderson were the sole owners, with Mertz owning a 28% share.

Under the Change in Bank Control Act a national bank must obtain prior approval of a change of ownership from the office of the Comptroller and if one individual acquires more than 25% of the stock, an application must be filed. Although Mertz tried to file the required application con-

cerning the Lovell bank himself, he never obtained approval of the acquisition of his ownership interest from the Comptroller. The Lovell bank was declared insolvent by the Comptroller in June 1983 and that agency conducted an investigation into Mertz's involvement in the Wibaux and Lovell banks. As a result, the Comptroller issued a notice of assessment in the sum of $595,000 against Mertz on April 2, 1984.

In July 1984 the Comptroller and Mertz entered into a settlement agreement concerning both the Wibaux and Lovell banks. Mertz was allowed to keep his ownership interest in the Wibaux bank, but was not allowed to serve as an officer, director or employee. He was also prohibited from acting in any capacity in any other bank. In return, the Comptroller agreed to forego the assessment of any civil penalties in connection with the Wibaux bank, but specifically reserved the right to take action concerning the assessment in connection with the Lovell bank "[i]f at any time, he deems it appropriate to do so...."

The Comptroller has taken no action to collect the assessment by demand, negotiation, action or otherwise. Neither party has contacted the Comptroller to ascertain his intentions regarding collection of the assessment, apparently because neither wants to "wake the sleeping giant."

At the time of hearing on the motion, the only evidence on the record regarding the assessment was the affidavit of Mary Curtin (Curtin), an attorney from Minneapolis, who Mertz retained as an expert. Curtin specializes in bank acquisitions and in litigation involving the Comptroller. She was formerly employed by the Federal Reserve System.

In her affidavit Curtin stated:

1. That the Comptroller has the power to assess civil penalties under the Change in Bank Control Act.
2. That there is no statute of limitations concerning the collection of assessments, and the defense of laches does not apply.
3. That the Comptroller may bring an action in federal court to collect the assessment at any time.
4. That the assessment is a final assessment and is not dischargeable in bankruptcy.
5. That the Change in Bank Control Act was amended in 1989 and, among other things, eliminated the right to a trial de novo in federal court and substituted an administrative hearing subject only to limited court review.
6. That from her experience in other cases, the Comptroller's position is that the change in the law applies to conduct occurring prior to 1989.
7. That if the Comptroller should bring action to collect the assessment, Mertz would have no credible defense.
8. That if or when the Comptroller takes legal action to collect the assessment, Mertz will incur substantial attorney fees.

There is reference in the briefs to Curtin's deposition; that deposition is not a part of the record transmitted to this court.

The trial court concluded that the claim regarding the assessment as an element of damages was too speculative to be considered by a jury, and ordered that no evidence about the assessment be offered at trial.

### ISSUE

Did the trial court err in entering a pretrial order prohibiting the offer of evidence of the Comptroller's assessment as an element of damages?

### DISCUSSION

For purposes of this appeal, we must assume that the averments of the complaint are true, and that the notice of assessment was issued by the Comptroller as the result of McDowell's negligence. *Hoverstad v. First National Bank and Trust Co.*, 76 S.D. 119, 74 N.W.2d 48 (1956).

The question in this case is whether the state of the current record establishes any possibility that a jury might reasonably conclude that the loss claimed actually exists. Mertz argues that the only evidence

of record at this point, Curtin's affidavit, establishes such a possibility, and that he should therefore be allowed to present his claim to the jury.

McDowell's position is that because no action has ever been taken by the Comptroller to collect the assessment since the notice of assessment in 1984, and because a jury would have to speculate as to (1) whether the Comptroller will ever take action to collect; and, (2) whether a judge or administrative hearing officer would sustain the assessment, the trial court properly precluded the claim before trial as a matter of law.

■ SDCL 21–1–10 allows damages for detriment "[c]ertain to result in the future." The word "certain" is not used in its absolute sense; its purpose is to ensure that facts exist which afford a basis for measuring the loss with reasonable certainty. *Peters v. Hoisington*, 72 S.D. 542, 37 N.W.2d 410 (1949); *Thomas v. St. Mary's Roman Catholic Church*, 283 N.W.2d 254 (S.D.1979).

■ The law distinguishes between those cases in which there is a question about the fact of whether damages have been incurred and those in which only the measure or amount of damages is uncertain. *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114 (S.D.1977); *Wang v. Bekken*, 310 N.W.2d 166 (S.D.1981). In the former case, reasonable certainty is required in proving the fact and cause of the loss; once those elements have been proven, the amount of damages need not be shown with the same degree of certainty. 22 Am. Jur.2d, *Damages* § 486, 487. In this case, the first question is not the amount of damages claimed, but whether a loss has in fact been suffered.

■ Whether the fact of a loss has been proven to a reasonable certainty is ordinarily a question for the trier of fact. *Hoisington, supra*. Only when the foundational evidence fails to remove the claim of loss from the realm of speculation should the matter be taken from a jury. *Karlen v. Butler Mfg. Co.*, 526 F.2d 1373 (8th Cir. 1975).

■ At this point in the proceedings, Curtin's affidavit presents a basis upon which a jury might reasonably conclude that a loss has in fact been incurred. Therefore, it should not be concluded at this time as a matter of law that the claim is too speculative for presentation to a jury. At trial, Curtin's assertions may be subjected to cross-examination and rebuttal testimony may be presented. Further, the testimony of a representative of the Comptroller's office may put the issue to rest completely. At the close of Mertz's case and again at the close of all the evidence the court may consider a motion for directed verdict. SDCL 15–6–50(a). If the evidence at either of those points has failed to remove the claim of loss or any part thereof from the realm of speculation, the judge may preclude the claim from the jury's consideration. *Kressly v. Theberge*, 79 S.D. 386, 112 N.W.2d 232 (1961).

■ Mertz requested that this court consider allowing his claim to be split so that he may present evidence of damage at a future time in the event the assessment is pursued and collected. That issue was not presented to or ruled upon by the trial court and is not properly before this court on appeal. We therefore decline to consider the requested remedy.

The ruling of the trial court is reversed and the case is remanded for further proceedings.

MILLER, C.J., HENDERSON, J., HERTZ, Acting J., and McKEEVER, Circuit Judge, concur.

AMUNDSON, J., not having been a member of the Court at the time this action was submitted did not participate.

STEELE, Circuit Judge for WUEST, J., disqualified.

McKEEVER, Circuit Judge, for SABERS, J., disqualified.